O

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **JUAN GERARDO FLORES-DIAZ,** | § | |
| **Petitioner,** | § | |
| v. | § | **Civil Action No. L – 05 – cv – 177** |
| | § | **Crim. Case No. L – 03 – cr – 1449** |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Juan Gerardo Flores Diaz's ("Flores") Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Under 28 U.S.C. § 2255. [Dkt. No. 1].[1] Having duly considered the petition, supporting memorandum, and applicable law, Flores's motion is DENIED. Also denied is a certificate of appealability.

**I. BACKGROUND**

Flores is a national and citizen of Mexico.[2] He entered the United States in 1966. Records reflect Flores was granted legal permanent status in 1966. On July 13, 1989, Flores pled guilty to possession with the intent to distribute 22.72 kilograms of marijuana. He was released, but failed to appear for sentencing. Flores was later arrested, and also charged with failure to appear. On February 5, 1990, he was sentenced in both cases. The court sentenced Flores to 21 months in

---

[1] "Dkt. No." refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing. "Dkt. No." will be used to refer to filings on case number L-05-cv-177. "Crim. Dkt. No." refers to the docket entries in criminal case number L-03-cr-1449.

[2] Most of the relevant facts and Flores's criminal history are derived from the Presentence Investigation Report ("PSR").

1

custody for the narcotics offense and six months for failing to appear, followed by five years of supervised release.  Flores was released from custody and deported to Mexico on August 20, 1991.

On July 5, 1992, Flores attempted to reenter the United States by claiming to be a United States citizen.  After a brief interview at the Lincoln-Juarez Port of Entry in Laredo, Texas, Flores admitted his true identity and nationality.  He was processed for exclusion and returned to Mexico.

Just two months later, in late September of 1992, Flores, along with other individuals, traveled from Dallas, Texas, to Tennessee, carrying approximately 18 pounds of marijuana.  PSR ¶ 39.  The purpose of the trip was for Flores to sell the marijuana.  *Id.*  In Tennessee Flores unsuccessfully attempted to sell the marijuana to an undercover agent.  *Id.*  He was subsequently arrested and charged with intent to distribute 18 pounds of marijuana and for having been found in the United States as an illegal alien without permission from the Attorney General.  On February 22, 1993, the U.S. District Court in Knoxville, Tennessee, sentenced Flores to 60 months incarceration and four years of supervised release.  On October 18, 1994, an immigration judge ordered Flores deported.[3]  Flores, after serving his sentence, was deported to Mexico on December 18, 1997.

On July 27, 1998, Flores attempted to reenter the United States by claiming to be a United States citizen.  During secondary inspection, he admitted his true identity, nationality, and admitted to having been previously deported to Mexico.  Flores was processed for expedited removal and returned to Mexico.

On October 26, 1998, Flores was apprehended attempting to reenter the United States.  The U.S. District Court in McAllen, Texas sentenced Flores on February 26, 1999, to 37 months in

---

[3]  The order of the immigration judge states, "Respondent has made no application for relief from deportation."

2

custody for attempting to reenter the United States after being deported.  Flores was once again deported to Mexico following his release from custody on June 2, 2001.

On September 16, 2003, Flores, an alien who had been previously deported, was indicted on charges that he was found in the United States without having obtained consent from the Secretary of the Department of Homeland Security.  [Crim. Dkt. No. 1].  While in custody, Flores unsuccessfully attempted to escape.  *See* Indictment Case No. 5:03-cr-1946.

On March 11, 2004,  Flores and his counsel appeared before Magistrate Judge Adriana Arce-Flores.  [Crim. Dkt. No. 16 at 1].  Judge Arce-Flores addressed Flores personally in open court and carefully provided a litany of admonishments and explanations, including the elements of the charges against him, the consequences of the plea, and the offense's maximum punishment.  Judge Arce-Flores also explained Flores's appellate rights, his right to plead not guilty and to force the government to prove their case beyond a reasonable doubt, and his right to have counsel represent him in all proceedings.  Judge Arce-Flores then asked whether he understood his rights, and Flores answered that he did.  After the Government read the factual basis of the case, Judge Arce-Flores asked Flores how he was pleading.  Flores answered "guilty."  Subsequently, Judge Arce-Flores found that Flores "fully underst[ood] the nature of the charges and penalties; . . . defendant's plea [was] made freely and voluntarily; . . . defendant [was] competent to enter this plea of guilty; and [t]here [was] an adequate factual basis for this plea."  *Id*. at 2.  Based on this, Judge Arce-Flores recommended this Court to accept Flores's guilty plea, and this Court ultimately adopted the recommendation.  [Crim. Dkt. No. 17].

The Court ordered a PSR which the U.S. Probation Department prepared.  The PSR calculated Flores's base offense level to be eight, but increased by 16 levels.  PSR ¶¶ 24, 25.  The

increase was due to Flores's 1993 conviction of possession with intent to distribute marijuana. *Id.* ¶ 25. The PSR also increased Flores's score by two levels for obstruction of justice in connection with Flores's attempted escape. *Id.* ¶ 28. Based on a total offense level of 26, *Id.* ¶ 31, and a criminal history category of V, *Id.* ¶ 42, Flores's range was 110 to 137 months incarceration.

Judge Keith P. Ellison sentenced Flores on July 23, 2004, to 110 months incarceration for the section 1326 violation and 60 months for the attempted escape from custody. These were to run concurrent. Flores's incarceration was to be followed by a three-year term of supervised release. A notice of non-appeal was filed on the same date as sentencing. [Crim. Dkt. No. 21]. Judgment was entered August 5, 2004. [Crim. Dkt. No. 22].

On August 1, 2005, in conjunction with a § 2255 petition, Flores requested an extension of time to file a more detailed petition. [Dkt. No. 1 & 2]. The Court granted the extension of time and instructed Flores that his "Memorandum of Support must be filed [with the Court] no later than October 21, 2005." [Dkt. No. 4]. On October 31, 2005, Flores filed a petition titled Initial Memorandum of Points and Authorities for Motion to Vacate, Set Aside, or Correct Sentence Pursuant to Title 28, U.S.C., Section 2255.[4] [Dkt. No. 6].

---

[4] Because the memorandum was date-stamped by the clerk of court on October 31, 2005, rather than October 21, 2005, it appears to be ten days late. However, Rule 3 of the Rules Governing Section 2255 Proceedings provides that a petition is timely filed "if deposited in the institution's internal mailing system on or before the last day for filing." U.S.C.S. Sec. 2255 Proc. R. 3. The memorandum states it was done and signed October 21, 2005. [Dkt. No. 6 at 36, 37]. Since it appears that Flores complied with Rule 3's requirement for establishing timeliness, the Court will consider his memorandum timely.

## II. DISCUSSION

Under Title 28, United States Code, Section 2255 ("§ 2255") a federal prisoner who claims that his "sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. Upon the filing of such a petition, the sentencing court must order a hearing to determine the issues and findings of fact "[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." *Id.*

It appears Flores's § 2255 is properly before this Court. Flores is a federal prisoner currently incarcerated in a federal institution in Forrest City, Arkansas, and he has moved this Court – the Court that imposed his sentence – to set aside, vacate, or correct his illegal reentry and escape sentence. Flores's motion appears to allege he is being held in violation of the Constitution and laws of the United States for the following reasons:

1.  He was denied the right to seek discretionary relief under Section 212(c) of the Immigration and Nationality Act ("§ 212(c)");

2.  The sentencing Court abused its discretion by not considering Flores's cultural assimilation and extraordinary family circumstances and thus not applying a downward guideline departure;

3.  The sentencing Court abused its discretion by enhancing Flores's sentence;

4.  Flores was denied effective assistance of counsel at sentencing in that counsel: (i) failed to research and argue for § 212(c) relief; (ii) failed to investigate Flores's cultural assimilation and extraordinary family circumstances and as a

5

result did not seek a downward departure from the sentencing guidelines; (iii) failed to argue against imposition of Flores's enhancements; (iv) failed to preserve the sentence enhancements for appeal; (v) failed to file a notice of appeal and did not appeal Flores's case; (vi) failed to advice Flores regarding the consequences of accepting the plea agreement; and (vii) performed under a conflict of interest.

In determining whether Flores is entitled to a hearing, the Court will first address the allegations made by Flores in his § 2255 petition. To fully address the aforementioned allegations, the Court has combined Flores's claims into three distinct causes of action and/or allegations. In Part II.A., the Court will address Flores's contention relating to § 212(c) relief. Part II.B. will consider Flores's alleged sentencing violations. Flores's ineffective assistance of counsel contentions will be entertained in Part II.C. The Court commences its discussion with the first allegation.

**A.  Section 212(c) Discretionary Relief**

The Immigration and Nationality Act ("INA") of 1952 provided, as interpreted by the Immigration and Naturalization Service ("INS"), that if an alien had been lawfully domiciled in the United States for seven consecutive years, without relinquishment, he could apply, under INA § 212(c), for discretionary waiver of deportation from the Attorney General. *INS v. St. Cyr*, 533 U.S. 289, 294-95 (2001)(citing 8 U.S.C. § 1182(c)). If granted, deportation proceedings were terminated and the alien remained a permanent resident.[5] *Id.*

---

[5] The statute stated: "Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . ." *St. Cyr*, 533 U.S. at 295 (quoting 8 U.S.C. § 1182(c)).

In 1990, Congress amended and narrowed § 212(c).  At that time, § 212(c) provided that any alien "who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years" is ineligible to apply for a discretionary waiver of deportation. *Nguyen v. BICE*, 400 F.3d 255, 258 (5th Cir. 2005)(citing 8 U.S.C. § 1182(c)(1994)). An aggravated felony included, "illicit trafficking in a controlled substance" which encompassed a "drug trafficking crime." *Garcia-Echaverria v. United States*, 376 F.3d 507, 516 (6th Cir. 2004)(citing 8 U.S.C. § 1101(a)(43)(B) (1994)).

In 1996, Congress essentially eliminated § 212(c) discretionary relief.  On April 24, 1996, in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Congress amended § 212(c) to bar relief to any alien convicted of an aggravated felony, regardless of the length of time served in prison for the conviction.  AEDPA, Pub. L. No. 104-132, § 440(d), 110 Stat. 1214, 1277 (Apr. 24, 1996).  Subsequently, Congress repealed § 212(c) relief for all aliens in the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), enacted September 30, 1996.  IIRIRA, Pub. L. No. 104-208, § 304(b), 110 Stat. 3009-546 (Sept. 30, 1996).  Section 212(c) relief was replaced with "cancellation of removal," a form of discretionary relief not available to any alien who has been convicted of an aggravated felony. *St. Cyr*, 533 U.S. at 297.

In 2001, the United States Supreme Court clarified the application of the aforementioned statutory changes in *INS v. St. Cyr*, 533 U.S. 289 (2001).  Enrico St. Cyr, a citizen of Haiti, was admitted to the United States as a lawful permanent resident in 1986.  533 U.S. at 293.  Ten years later, on March 8, 1996, he pled guilty in a state court to a charge of selling a controlled substance in violation of Connecticut law. *Id.*  That conviction made him deportable. *Id.*  Under pre-AEDPA law, St. Cyr would have been eligible for a waiver of deportation at the discretion of the Attorney

General.  *Id.*  However, removal proceedings against him were not commenced until April 10, 1997, after both AEDPA and IIRIRA became effective, and the Attorney General interpreted those statutes as stripping him of the authority to grant such discretionary waiver.  *Id.*

The Supreme Court held AEDPA and IIRIRA, which eliminated § 212(c) relief, could not apply retroactively to bar § 212(c) relief to aliens who were eligible for such relief at the time they pled guilty to the offense that rendered them ineligible under AEDPA and IIRIRA.  533 U.S. at 326. The Court reasoned that aliens had "settled expectations" of qualifying for § 212(c) relief at the time they entered their pleas and therefore Congress' repeal of the provision was impermissibly retroactive as to such aliens.  *Id.* at 321.  In other words, *St. Cyr* aids only those aliens who pled guilty under pre-AEDPA and pre-IIRIRA law with the expectation they would receive the benefit of § 212(c) relief, and who were denied § 212(c) relief by the INS after the enactment of AEDPA and IIRIRA on the belief that such discretion had been eliminated.  *Id.* at 325.

In the instant case, Flores relies on *St. Cyr* to mount a due process violation.  He alleges he was denied the right to apply for § 212(c) relief in 1994 and 2001.  Specifically, he claims that while serving his 1993 conviction, "in 1994, after a brief hearing conducted via closed circuit television, a deportation order was placed against Petitioner.  Petitioner was told he could not appeal the deportation order and was not eligible for Section 212(c) relief."  [Dkt. No. 6 at 11].  Flores then claims that in 2001, after serving his term of imprisonment for his 1999 conviction, he attempted to apply for § 212(c) relief, but was told he was not eligible because that relief had been repealed by Congress.  *Id.*  "Because Petitioner was prevented from applying for Section 212(c) relief," according to Flores, "he was denied his due process right . . . in violation of his Fifth Amendment right."  *Id.*  Flores's argument is unpersuasive for a variety of reasons.

8

First, Flores does not allege the immigration judge ("IJ") was the entity who told him he could not appeal the 1994 deportation order or that told him he was ineligible for discretionary relief in 2001. *See, e.g., United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993)(explaining conclusory allegations on critical question do not raise constitutional issue). However, even assuming, as Flores insinuates, that the IJ misinformed him regarding his right to appeal the deportation order and his ineligibility for § 212(c) discretionary relief, Flores's argument that this misinformation denied him due process under the Fifth Amendment fails.

The United States Supreme Court has held that a defendant may challenge the validity of an underlying order of deportation in a criminal prosecution in which that prior deportation is an element of the crime. *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987). The Fifth Circuit, interpreting *Mendoza-Lopez*, held an alien challenging an underlying deportation order must establish: (1) the prior hearing was fundamentally unfair; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice. *United States v. Lopez-Vasquez*, 277 F.3d 476, 483 (5th Cir. 2000)(citations omitted). The Fifth Circuit further explained that Congress had effectively codified *Mendoza-Lopez* in 8 U.S.C. § 1326(d). *Id.* at 484. If the alien fails to establish one of the enumerated elements, the court need not consider the others. *Id.* at 485 (citing *United States v. Encarnacion-Galvez*, 964 F.2d 402, 406 (5th Cir. 1992)). The Court focuses on the prejudice element.

A showing of prejudice means there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported. *United States v. Benitez-Villafuerte*, 186 F.3d 651, 658-59 (5th Cir. 1999)(citations and quotations omitted). In other words, if the

defendant was legally deportable and, despite the INS's errors, the proceeding could not have yielded a different result, the deportation is valid for purposes of section 1326.  *Id.* at 658 (citations and quotations omitted).

In this case, Flores failed to show the alleged procedural deficiencies caused him actual prejudice because Flores would not have qualified for § 212(c) relief on two independent grounds. On the first ground, Flores was not a legal permanent resident when he was ordered deported in 1994.  He had lost his legal status after his 1989 conviction and subsequent deportation.  As spelled out by the Supreme Court, § 212(c) authorized any permanent resident alien, who had not been previously deported, to apply for discretionary waiver, and if this waiver was granted, the deportation proceedings terminated and the alien remained a permanent resident.  *Sy Cyr*, 533 U.S. at 295. Because Flores was not a legal permanent resident when he was ordered deported in 1994, he would not have qualified for § 212(c) relief.  Secondly, in 1992 – the date Flores entered his guilty plea – § 212(c) relief was available only to those aliens who had not served a combined prison term of five years.  Although in October of 1994 – the date Flores was ordered deported – Flores had not yet served "a term of imprisonment of at least 5 years" of combined time on both of his drug trafficking crimes, i.e., 1989 and 1993 convictions, that did not change Flores's ineligibility to apply for discretionary relief because the combined term totaled 81 months.  *See Giusto v. INS*, 9 F.3d 8, 11 (2d Cir. 1993)(per curiam)("[I]f sentence is five years or longer, the mere fact that the INS initiated deportation proceedings early would not make the [§ 212(c)] waiver available."); *Gomes v. Ashcroft*, No. 01-30160-MAP, 2002 U.S. Dist. LEXIS 6323, at *12-13 (D. Mass. Apr. 9, 2002)(rejecting petitioner's argument that both his § 212(c) application and the immigration judge's decision were made before he had served five years).  Moreover, "§ 212(c) relief was couched in conditional and

permissive terms . . . [and as] a piece of legislative grace, it conveyed no rights, it conferred no status, and its denial does not implicate the Due Process clause." *Lopez-Ortiz*, 313 F.3d 225, 231 (5th Cir. 2002), *cert. denied*, 537 U.S. 1135 (2003).  Because Flores failed to show prejudice, the court need not address the other *Mendoza-Lopez* factors.  Therefore, Flores's claim fails.[6]

Second, Flores presented none, and the Court was unable to find binding case law addressing a petitioner's ability to challenge a 12 year old deportation order after subsequent reentry convictions through a current § 2255 petition.  *See* 28 U.S.C. § 2255 (imposing one-year limitations period); *see also Daniels v. United States*, 532 U.S. 374, 382 (2001)("If . . . prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available . . . then that defendant is without recourse . . . [meaning] the defendant may not collaterally attack his prior conviction through a motion under § 2255.").[7]

Lastly, even if Flores's claim is cognizable under a § 2255 motion, Flores's reliance on *St. Cyr* is misplaced because Flores was not denied relief under AEDPA or IIRIRA.  Flores was ordered deported in 1994; before the 1996 legislative changes were enacted which eliminated § 212(c) relief.  The INS, at the time Flores was ordered deported and at the time of Flores's guilty plea – 1992 – did not erroneously preclude convicted felons from applying for discretionary waivers because the limiting language of AEDPA and IIRIRA, examined in *St. Cyr*, was not yet enacted.  Thus, Flores

---

[6] If Flores was ineligible for § 212(c) discretionary relief in 1994, it follows he was also ineligible for it in 2001 because: (1) he had not been lawfully admitted for permanent residence; (2) he had served a term of imprisonment in excess of five years; and (3) § 212(c) relief had been repealed by Congress.

[7] *See, e.g., Tyson v. Jeffers*, 115 Fed. Appx. 34, 35 (10th Cir. 2004)(unpublished)(agreeing with district court that petitioner's 1998 guilty plea forecloses any review of his 1992 removal order).

was not prevented from applying for discretionary waiver set forth in § 212(c) by either AEDPA or IIRIRA.  In sum, for all of the reasons enumerated above, Flores's claim as it relates to § 212(c) relief ultimately fails.

## B. Flores's Sentence Under the Sentencing Guidelines

Flores raises two arguments related to sentencing.  For his first argument, Flores alleges the Court should have considered a downward departure pursuant to Section 5K2.0 of the United States Sentencing Guidelines ("U.S.S.G.") due to Flores's cultural assimilation.  [Dkt. No. 6 at 12-15]. Second, Flores alleges the Court violated his Fifth and Sixth Amendment rights by applying the mandatory provisions of the sentencing guidelines when the Court sentenced him to 110 months. *Id.* at 16.  For the second proposition, Flores cites *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005).

Fifth Circuit case law forecloses Flores's contentions.  The first allegation fails because claims that the Court incorrectly applied provisions of the United States Sentencing Guidelines are not cognizable under 28 U.S.C. § 2255.  *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999); *United States v. Payne*, 99 F.3d 1273, 1281-82 (5th Cir. 1996)("Non-constitutional claims that could have been raised on direct appeal but were not may not be asserted in a collateral proceeding. . . . A district court's technical application of the Guidelines does not rise to a constitutional issue."); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995)("A district court's calculation under or application of the sentencing guidelines standing alone is not the type of error cognizable under section 2255."), *cert. denied*, 516 U.S. 1165 (1996); *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994)("A district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under § 2255." (citing *United States v. Vaughn*, 955

12

F.2d 367, 368 (5th Cir. 1992))).  Accordingly, the Court will not consider Flores's attack on the Court's application of the sentencing guidelines.

Flores's second sentencing contention also fails.  In *Booker*, decided January of 2005, the Supreme Court stated its holding applied only to "cases on direct review."  543 U.S. at 268.  Flores's conviction became final shortly after August 6, 2004 [Crim. Dkt. No. 22] – before the Supreme Court issued *Booker* – meaning Flores's case was not on "direct review."  Furthermore, the Fifth Circuit has determined *Booker* does not apply retroactively on collateral review to a federal prisoner's initial § 2255 motion.  *United States v. Gentry*, 432 F.3d 600, 603 (5th Cir. 2005). Therefore, *Booker* does not afford any relief to Flores because that case is not applied retroactively.[8]

### C.  Ineffective Assistance of Counsel Under *Strickland v. Washington*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "reasonably effective assistance" of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to obtain post-conviction relief due to ineffective assistance of counsel, a defendant must show (1) that counsel's representations fell below an objective standard of reasonable service and (2) that this deficient performance prejudiced the defense such that the outcome of the trial or criminal proceeding would have been different.  *Id.* at 687-91, 694.  A court must, of course, indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence or that, under the circumstances, the challenged action was sound trial strategy.  *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993); *Ricalday v. Procunier*, 736 F.2d 203, 206 (5th Cir. 1984).

---

[8] The Court considers *Blakely/Booker* arguments within the realm of ineffective assistance of counsel claims in more detail below.  *See infra* Part II.C.3.

In the case at bar, Flores makes a plethora of allegations regarding counsel Alonso Ramos's ("Ramos") alleged ineffectiveness.  To determine whether Flores met his burden of showing that Ramos's performance fell below an objective standard of reasonable service that prejudiced Flores, the Court begins its discussion with the first allegation.

### 1.   Failure to research and argue for § 212(c) relief allegation

Flores initially claims his counsel was deficient in that Ramos failed to research and argue for § 212(c) relief.  [Dkt. No. 6 at 18].  The Fifth Circuit has described the standard to measure an attorney's performance as "requiring that counsel research relevant facts and law, or make an informed decision that certain avenues will not be fruitful." *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000).  "Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention."  *Id.*

As already discussed above, Flores was not eligible for § 212(c) relief.  His counsel cannot therefore be faulted for not researching and raising fruitless claims.  *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999)("An attorney's failure to raise a meritless argument cannot . . . form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995)("Counsel cannot be deficient for failing to press a frivolous point."); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984)("Counsel is not required to engage in the filing of futile motions.").  Under these set of circumstances, Flores has not shown his counsel's conduct fell below an objective standard of reasonable service.  Because Flores failed to satisfy the first *Strickland* prong, it is unnecessary to consider prejudice.  *See United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000)("A court need not address both components of an ineffective assistance of counsel claim

14

if the movant makes an insufficient showing on one."); *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995)(same).  Accordingly, Flores is not entitled to relief on this claim.

### 2.  Failure to argue Flores's cultural assimilation contention

In his next argument, Flores claims Ramos failed to present to the Court his "cultural assimilation" and "extraordinary family circumstances" which could have warranted a downward departure under U.S.S.G. § 5K2.0.  [Dkt. No. 6 at 12, 21].  In particular Flores states:

> [T]he majority of Petitioner's cultural and family ties are in the United States where he, himself, has resided since the age of four (4) months and became a legal resident in 1966 with parents who became legal residents as well which qualifies him for a downward departure upon 'extraordinary family circumstances' (U.S.S.G. Section 5H1.6) in as much as, his family has long since been 'culturally assimilated' here in the United States.

[Dkt. No. 6 at 12].  Flores concludes he was thus deprived of having his "cultural assimilation" and extraordinary family circumstances" factored or considered because his counsel failed to present to the Court Flores's background.  *Id.* at 14.  The Court considers the cultural assimilation allegation first.

### a.  Cultural assimilation under U.S.S.G. § 5K2.0

In *United States v. Rodriguez-Montelongo*, 263 F.3d 429, 433-34 (5th Cir. 2001), the Fifth Circuit held that "cultural assimilation is a permissible basis for downward departure" under § 5K2.0 of the U.S.S.G., but that such a departure is to be made only where the circumstances are "so atypical or extraordinary."

In the instant case, Flores's circumstances are not "so atypical or extraordinary to warrant a downward departure." *Rodriguez-Montelongo*, 263 F.3d at 434.  As enumerated in the factual background, Flores has two drug trafficking convictions, an attempted escape conviction, two illegal

15

reentry convictions, and, although they did not result in convictions, he was caught attempting to enter the United States several times by claiming to be a U.S. Citizen. This extensive criminal behavior undermines Flores's claim that he was entitled to a downward departure based on cultural assimilation. "The concept of cultural assimilation denotes a certain conformity to socially acceptable standards of conduct. . . . Persistent criminal activity is not a socially acceptable standard of conduct." *United States v. Castillo*, 386 F.3d 632, 639 (5th Cir.)(Pickering, J., dissenting), *cert. denied*, 543 U.S. 1029 (2004). This Court agrees with Judge Pickering that "an alien who repeatedly breaks the law and consistently commits crimes has not been culturally assimilated and should not be given a downward departure based on cultural assimilation, even though he might otherwise meet the criteria for cultural assimilation." *Id.*; *see also United States v. Garcia-Mejia*, No. H-06-0403, 2006 U.S. Dist. LEXIS 62150, at *25 (S.D. Tex. Aug. 31, 2006)(rejecting defendant's argument that his counsel was deficient because extensive criminal history, which included serious offenses following multiple illegal entries into the United States, did not merit departure under cultural assimilation).

In any event, the information Flores claims was not presented to the Court is reflected in the PSR, meaning the Court was aware of Flores's background at sentencing. *See* PSR ¶¶ 45-50. Therefore, under the circumstances of this case, Flores has not demonstrated his counsel's failure was deficient or that he was prejudiced by his counsel's failure to seek a downward departure based on assimilation.

### b.  Extraordinary family circumstances under U.S.S.G. § 5H1.6

The Sentencing Guidelines explicitly state that "[f]amily ties and responsibilities are *not* ordinarily relevant in determining whether a departure may be warranted."  U.S.S.G. § 5H1.6. (2003)(emphasis added).  Thus, Flores's assertions relating to his family's circumstances, even if supported by competent evidence, were not relevant to determining whether the Court should have departed downward.  For this reason, any motion for downward departure based on family circumstances would have been fruitless, thus Ramos's failure to push a fruitless claim does not amount to deficient performance.  *See Kimler*, 167 F.3d at 893; *Sones*, 61 F.3d at 415 n.5; *Maggio*, 736 F.2d at 283.  Because Flores failed to satisfy the first *Strickland* prong, the Court need not address the second prong.  *See Stewart*, 207 F.3d at 751; *Amos*, 61 F.3d at 348.

### 3.  Failure to object to enhanced sentence claim

Flores further claims counsel Ramos was deficient because he did not object to his allegedly enhanced sentence.  According to Flores, "Counsel was obliged professionally and as a matter of practice in the legal standard of reasonableness to object and preserve" issues relating to *United States v. Booker*, 543 U.S. 220 (2005), *Blakely v. Washington*, 542 U.S. 296 (2004), and related cases. [Dkt. No. 6, at 24, 31].  Flores concludes and "requests that all enhancements or time that was added to his sentence, which was not charged in the indictment, or admitted by Petitioner, established in a plead of guilty, or put before a jury and found beyond a reasonable doubt be subtracted from his sentence." *Id.* at 31.  This claim is misplaced.

The Fifth Circuit has explained:

> In Booker, a majority of the Supreme Court extended to the federal Sentencing Guidelines the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466 . . . (2000), and *Blakely* . . . : pursuant to the Sixth Amendment, any fact, *other than the fact of*

> *a prior conviction*, 'which is necessary to support a sentence exceeding the maximum
> authorized by the facts established by a plea of guilty or a jury verdict must be
> *admitted by the defendant* or proved to a jury beyond a reasonable doubt.'

*In re Elwood*, 408 F.3d 211, 212 (5th Cir. 2005)(per curiam)(quoting *Booker*, 543 U.S. at

244)(emphasis added).

In this case, Flores's sentence was increased due to a prior conviction, *see* PSR ¶ 25, and

because Flores attempted to escape. *Id.* ¶ 28.  Flores acknowledges his sentence was enhanced due

to his prior convictions.  He concedes in his current petition:  "Petitioner *fell* in the criminal history

category of V using the 2003 U.S.S.G. [and these] enhancements added considerable time to

Petitioner's sentence from 15-21 months to 110-137 months." [Dkt. No. 6, at 16](emphasis added).

Even without the concession, Flores's claim depends on his argument that a prior conviction was

used to increase his sentence in violation of the Constitution because that conviction was not proven

to a jury beyond a reasonable doubt.  However, by its plain terms, the rule in *Apprendi*, as applied

in *Booker*/*Blakely*, excludes prior convictions from the type of fact required to be proven to a jury

beyond a reasonable doubt.  *See In re Elwood*, 408 F.3d at 212.  Furthermore, the evidence against

Flores relating to his attempted escape was strong, *see* PSR ¶¶ 16-18, and this was admitted by

Flores at his rearraignment when he pled guilty and in a letter to Judge Ellison, *see* Letter from Juan

Gerardo Flores Diaz to Keith P. Ellison, U.S. District Judge (May 20, 2004)(on file with the PSR)("I

opted for the escape route.").  *See Kerr v. United States*, No. A-06-CA-512 JN, 2006 U.S. Dist.

LEXIS 70435, at *12-13 (W.D. Tex. Sept. 26, 2006)("Because Movant admitted, at his plea hearing,

to the relevant aspect of the Factual Basis read into the record by the Government he has waived any

*Booker* error claim.").

In short, Flores failed to demonstrate he is entitled to any relief on this ground.  Since *Booker* and *Blakely* offered no relief to Flores and because there were substantial facts supporting Flores's escape which were admitted by Flores, Ramos cannot be faulted for failing to object to the Court's sentence on this unmeritorious ground.  *See Kimler*, 167 F.3d at 893; *Sones*, 61 F.3d at 415 n.5; *Maggio*, 736 F.2d at 283.  *Strickland*'s prejudice prong need not be considered since Flores failed to satisfy the first *Strickland* prong.  *See Stewart*, 207 F.3d at 751; *Amos*, 61 F.3d at 348. Consequently, this claim fails.

### 4.  Issues dealing with preserving or filing appeal

Flores also faults Ramos for not preserving or filing an appeal on his case. [Dkt. No. 6 at 37]. This allegation is without merit.  On June 23, 2004, Flores filed a Notice of Non-Appeal.  Said notice, written in both English and Spanish, states:  "I am a defendant in this case, and I have now been sentenced. I know that I have the right to appeal to the Court of Appeals. I have discussed my case with my attorney and I have decided not to pursue an appeal." [Crim. Dkt. No. 21].  Therefore, Ramos cannot be faulted for not filing a notice of appeal since Flores expressly conveyed he was not pursuing an appeal.  *Id.*  Moreover, Flores concedes he "did not express a desire to appeal." [Dkt. No. 6 at 30].  Accordingly, any allegations related to appeal are foreclosed by Flores's notice of non-appeal and concession.  *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998)("Following a conviction and exhaustion or waiver of the right to direct appeal, [Fifth Circuit] presumes a defendant stands fairly and finally convicted." (citing *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991)))(en banc), *cert. denied*, 502 U.S. 1076 (1992).  Thus, Flores's claim fails.

### 5.  Issues relating to plea agreement

Flores also alleges he entered an unknowing plea because he was unaware of the consequences of his plea.  [Dkt. No. 6 at 27].  Flores refines this allegation by claiming he received ineffective assistance of counsel because counsel failed to properly advise him regarding the consequences of accepting the plea agreement, leading to an "unknowing and involuntary plea."  *Id.*

For a plea to be knowing and voluntary, a "defendant must be advised of and understand the consequences of the [guilty] plea."  *United States v. Gaitan*, 954 F.2d 1005, 1011 (5th Cir. 1992).  The Fifth Circuit has identified three core concerns in a plea proceeding: (1) absence of coercion; (2) full understanding of the charges; and (3) a realistic appreciation of the consequences of the plea.  *United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993).

Here, the record shows Flores was fully appraised of the consequences of accepting a guilty plea.  On March 11, 2004,  Flores and his counsel appeared before Magistrate Judge Adriana Arce-Flores.  [Crim. Dkt. No. 16 at 1].  Judge Arce-Flores addressed Flores personally in open court.  She first asked Flores if he was under the influence of drugs or alcohol or whether he had ever been admitted to a mental institution.  Flores answered no.  Judge Arce-Flores then informed Flores of the charges against him, i.e., illegal reentry and attempted escape, by reading the indictment, and he testified he understood both charges.

Also explained to Flores was the offense's maximum punishment.  Specifically, the Government read into the record that Flores faced a maximum term of incarceration of 20 years and a $250,000.00 fine in the reentry charge, and not more than five years and a $250,000.00 fine for the attempted escape.  The magistrate judge then asked if Flores understood the maximum penalties he faced, and Flores testified that he did.

Additionally, prior to accepting the plea, Judge Arce-Flores informed Flores about his trial rights.  Flores was informed he had a right to plead not guilty; that by pleading not guilty the Government had to prove its case beyond a reasonable doubt by presenting evidence and witnesses against him; and that Flores had a right to have counsel represent him throughout these proceedings. Judge Arce Flores further explained that by pleading guilty, Flores was foregoing his right to trial by jury.  The magistrate judge then asked if Flores understood his rights, and Flores answered "yes, your Honor."  She then asked if Flores still wanted to go forward with a plea of guilty, and Flores answered that he was.

After the Government read the factual basis of the case, the magistrate judge asked Flores how he was pleading.  Flores answered "guilty."  Subsequently, Judge Arce-Flores found that Flores "fully underst[ood] the nature of the charges and penalties; . . . defendant's plea [was] made freely and voluntarily; . . . defendant [was] competent to enter this plea of guilty; and [t]here [was] an adequate factual basis for this plea."  *Id.* at 2.

Flores answered the Rule 11 colloquy, under oath and in open court, and each carries a strong presumption of verity.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001).  Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy."  *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002).  Thus, Flores's sworn statements and exchange with Judge Arce-Flores preclude the relief he seeks here.

In sum, the Court finds Flores was not coerced, he understood the charges against him, he understood the trial rights he was giving up, and he understood the maximum sentence he faced. Flores's claim that he did no understand the consequences of his plea is flatly contradicted by his

own testimony in this case.  Nothing in Flores's testimony suggests his plea was not knowing or involuntary, as he now alleges.  Accordingly, Flores's claim fails.

### 6.  Conflict of interest allegation

Lastly, Flores alleges his counsel's familial relationship with a United States Marshal created a per se conflict of interest.  [Dkt. No. 6 at 19].  To support this allegation,  Flores simply states that Ramos's brother is a United States Marshal who "had an interest in Petitioner's legal matters."  *Id.*

To succeed in an ineffective assistance of counsel claim based on a conflict of interest, Flores must show that his attorney labored under an actual conflict which adversely affected his lawyer's performance.  *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005); *Perillo I  v. Johnson*, 79 F.3d 441, 447 (5th Cir. 1996).

This claim must fail because Flores has not demonstrated any conflict which adversely affected his counsel's performance.  Flores's statement that Ramos's brother "had an interest in Petitioner's legal matters" is simply insufficient.  *See Infante*, 404 F.3d at 391; *Perillo I*, 79 F.3d at 447; *see also United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993)(explaining conclusory allegations on critical question do not raise constitutional issue).  Therefore, the claim fails.

### D.  Evidentiary Hearing

Flores requested an evidentiary hearing on his claims.  [Dkt. No. 6 at 33].  A motion brought under 28 U.S.C. § 2255 may be denied without a hearing if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief.  *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992)(per curiam).  Because the Court concludes the files and records show that Flores is not entitled to relief, an evidentiary hearing is unnecessary.  Therefore, Flores's request for an evidentiary hearing is denied.

## III.  CERTIFICATE OF APPEALABILITY

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1).  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)(internal quotations and citations omitted).  Stated differently, where claims have been dismissed on the merits, the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*.  It is perfectly lawful for a district court to deny a certificate of appealability sua sponte.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The statute does not require that a petitioner move for a certificate of appealability; it merely states that an appeal may not be taken without a certificate of appealability having been issued. *Id*. (citing 28 U.S.C. § 2253(c)).

The Court concludes that reasonable jurists could not debate the denial of Flores's § 2255 motion on substantive grounds.  Thus, no certificate of appealability will issue.

## IV.  CONCLUSION

In conclusion, Flores is not entitled to relief.  Accordingly, for the aforementioned reasons, Flores's  Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Under 28 U.S.C. § 2255 [Dkt. No. 1] is DENIED.  Also DENIED is a certificate of appealability.  Finally, a separate final judgment will be issued.

It is so ORDERED.

Signed this <u>14th</u> day of May, 2007, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**